THE NATIONAL SHAWMUT BANK OF BOSTON & OTHERS
*vs.* WOODS HOLE, MARTHA'S VINEYARD AND NANTUCKET
STEAMSHIP AUTHORITY & others.

Suffolk.    October 8, 1971. — February 23, 1972.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Woods Hole, Martha's Vineyard and Nantucket Steamship Authority.*
   *Statute,* Construction.    *Contract,* What constitutes.    *Municipal*
   *Corporations,* Relation to Commonwealth, Contracts.    *Constitutional*
   *Law,* Political subdivisions, Obligation of contracts.

Statute 1960, c. 701, § 9, as amended, requires that a surplus realized
   by the Woods Hole, Martha's Vineyard and Nantucket Steamship
   Authority be deposited in a sinking fund for purchase or redemp-
   tion of bonds rather than that it be paid to towns in reimbursement
   for earlier contributions by them to the Authority's deficits. [221–
   224]
A phrase contained in St. 1948, c. 544, creating a steamship authority,
   but omitted in St. 1960, c. 701, creating a successor steamship
   authority, is not to be considered as revived in construing the 1960
   statute. [222–223]
The municipalities to which St. 1948, c. 544, related were instrumen-
   talities of the Commonwealth having no contractual rights which

could have been extinguished unconstitutionally by St. 1960, c. 701. [223–224]

BILL IN EQUITY filed in the Superior Court on October 7, 1965.

The suit was heard by *Tisdale, J.*

*John L. Saltonstall, Jr.,* for the Town of Edgartown & others.

*Acheson H. Callaghan, Jr.,* for the National Shawmut Bank of Boston & others.

*John J. Graham,* for Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, submitted a brief.

REARDON, J.   The plaintiffs, The National Shawmut Bank of Boston (Fiscal Agent) and three savings banks, the Worcester County Institution for Savings, the Malden Savings Bank, and The Boston Five Cents Savings Bank, holders of over ten per cent of the outstanding bonds of the defendant Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (authority), bring this bill seeking declaratory relief.   At stake is the disposition of certain funds held by the Fiscal Agent acting in that capacity under a resolution of the authority.   The facts are not in dispute.   We refer to the findings of the judge which set them out in detail.

Statute 1960, c. 701, as amended (the 1960 act), created the authority to operate a steamship line between the mainland and the islands of Martha's Vineyard and Nantucket.   The authority is successor to the New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (predecessor authority), which was created by St. 1948, c. 544, as amended (the 1948 act). It operated steamers between New Bedford and Woods Hole and the islands.

On January 1, 1961, when the predecessor authority was succeeded by the authority, all of the predecessor authority's assets, outstanding indebtedness and liabilities were assumed by the authority pursuant to § 16 of the 1960 act.

From 1954 through 1960, the predecessor authority accumulated annual deficits totaling $1,827,801. In accordance with the pertinent provisions of the 1948 act these were paid through the Commonwealth by the defendant towns of Falmouth, Nantucket, Chilmark, Gay Head, Edgartown, Oak Bluffs, Tisbury and West Tisbury, and the city of New Bedford. In 1961 and 1962 the authority incurred deficits totaling $270,319, which were ultimately paid by the above named towns.[1] From 1963 through 1966 the authority realized a surplus after setting aside certain funds as required by clauses First through Fourth of the first paragraph of § 9 of the 1960 act. This surplus totaled $250,091.53, and is deposited with the Fiscal Agent.[2] The disposition of this total is the problem presented in the bill. The trial judge decreed that the money should be deposited in the sinking fund established in § 9. The towns and the city contend that the surplus should be paid to them as reimbursement for their contribution to the deficits incurred by the authorities. Pursuant to G. L. c. 214, § 19, all the towns with the exception of Chilmark and West Tisbury have appealed.

The question we have for decision centers about the construction of § 9 of the 1960 act, as amended by St. 1965, c. 779, which provides that "revenues derived from the operation of the steamship line shall be set aside at regular intervals in the following order": First, to an operations fund; Second, to the sinking fund to pay the principal and interest of all bonds when due; Third, to a replacement fund for depreciation of property and obsolescence, improvements and certain losses; "Fourth: to the reserve fund, an amount sufficient to maintain said fund at the amount of two hundred thousand dollars; and Fifth: to the sinking fund, all of the remaining revenues, to be used within a reasonable time for the pur-

[1] Under the 1960 act, and beginning in 1961, the city of New Bedford ceased to be a mandatory port of call and was relieved of further liability for any deficits incurred by the authority.

[2] The total has been increased by $33,729.95 as the result of investments of the fund by the Fiscal Agent.

chase or redemption of bonds." The 1948 act, as amended by St. 1949, c. 142, § 2, contained a § 9 similar to that in the 1960 act with one significant difference. There it was provided: "Fourth: to the reserve fund hereinafter established, an amount sufficient to maintain said fund at the amount originally established as hereinafter provided *and thereafter to make any reimbursement as hereinafter provided for any moneys which shall have been paid by the commonwealth under this action"* (emphasis supplied).

It has been argued by counsel for the defendants that the omission from the 1960 act of the language emphasized plays no part in the determination whether the funds exceeding the required amount for the reserve fund should fall into the sinking fund set up in clause Fifth of the first paragraph of § 9 and therefore go to the bondholders, or whether those funds should be paid to the towns in reimbursement for their earlier contributions to the authority for its deficits. The towns contend that the language emphasized is "mere surplusage." Both the 1948 and the 1960 acts provide in a subsequent paragraph in almost identical language that, in the words of the 1960 act, "[i]f as of the last day of December in any year the reserve fund shall exceed the amount established therefor, the Authority shall apply any excess so far as necessary to reimbursing the commonwealth for any amounts which it may have paid to the Authority under the provisions hereof and the commonwealth shall thereupon distribute the amounts so received to the towns." The towns claim that this requirment is to be met before any money reaches the sinking fund established in clause Fifth.

We do not think that the emphasized language is "mere surplusage." "It is not to be assumed that words in a statute have no force or effect." *Gillam* v. *Board of Health of Saugus,* 327 Mass. 621, 623. *Milton* v. *Metropolitan Dist. Commn.* 342 Mass. 222, 225. It would rather appear that the emphasized language was eliminated in the 1960 act with the intent of altering the pri-

orities for the distribution of revenues realized by the authority so that after the reserve fund reached the requisite $200,000, clause Fifth would become operable, resulting in payment into the sinking fund. "[W]hen any statute is revised, or one act framed from another some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled. To hold otherwise would be to impute to the legislature gross carelessness or ignorance; which is altogether inadmissible. *Ellis* v. *Paige*, 1 Pick 43, 45." *Brockton Edison Co.* v. *Commissioner of Corps. & Taxn.* 319 Mass. 406, 411. Thus, here, a phrase omitted from the 1960 act but contained in the 1948 act should not be revived.

We are further reassured in this interpretation by subsequent legislation which we may examine. *Hurle's Case,* 217 Mass. 223, 226. *Packard Clothes Inc.* v. *Director of the Div. of Employment Security,* 318 Mass. 329, 334. Statute 1969, c. 654, amends paragraph four of § 9 of the 1960 act to read as follows: "If as of the last day of December in any year the reserve fund shall exceed the amount established therefor, the Authority shall deposit such excess in the sinking fund, to be used within a reasonable time for the purchase or redemption of bonds outstanding. When there are no such bonds outstanding to be redeemed, then such excess funds shall be first paid to the commonwealth for any amounts which it may have paid to the Authority under the provisions hereof and the commonwealth shall thereupon distribute the amounts so received to the towns assessable for a deficiency, as provided in this section in proportion to the amounts for which they may be so assessed."

The towns argue that they acquired rights under the 1948 act which cannot constitutionally be extinguished by the passage of the 1960 act. They cite the following authorities: *St. Louis Union Trust Co.* v. *Franklin-American Trust Co.* 52 F. 2d 431; *Chapman* v. *Jocelyn,* 182 Cal. 294, 297–298; *Jeffreys* v. *Point Richmond Canal & Land Co.* 202 Cal. 290, 294; *County of San Diego* v. *Childs,* 217 Cal. 109, 121–122. These cases which involve the rights

of private bondholders are unpersuasive. We can agree
that the rights of those bondholders were created by con-
tract with the issuing authorities. The towns are in quite
a different position, however. They are neither private
parties nor bondholders; they are instrumentalities of the
State obligated by statute to make payments when the au-
thority incurs a deficit. They have no contractual rights
to be impaired by the 1960 act. "[W]e do not regard the
obligation [of the towns and city] as having ever been
founded in any contract, express or implied. On the con-
trary, we think it originated in the authority of the legis-
lature to exercise its discretion in the distribution of pub-
lic burdens." *Attorney Gen.* v. *Cambridge*, 16 Gray, 247,
248. See *Scituate* v. *Weymouth*, 108 Mass. 128, 130–131;
*Cambridge* v. *Railroad Commrs.* 153 Mass. 161, 168–169.

While we realize that another interpretation can be ar-
gued, it is our view that the trial judge was correct.

*Decree affirmed.*