ELBERT L. ARNOLD & others *vs.* COMMISSIONER OF
CORPORATIONS AND TAXATION & another
(and a companion case between the same parties).

Hampshire.    June 26, 1951. — September 13, 1951.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Corporation*, Charitable corporation, Organization, Commissioner of
corporations and taxation. *Charity. Parks. Equity Pleading and
Practice*, Appeal from refusal to approve articles of organization,
Parties. *Mandamus. Secretary of the Commonwealth. Words,* "Chari-
table."

The right of appeal to the Superior Court given by the last sentence of
G. L. (Ter. Ed.) c. 180, § 6, as appearing in St. 1949, c. 692, § 1, is not
confined to instances of refusals of the commissioner of corporations
and taxation based on grounds referred to in that section, but is avail-
able upon a refusal for any reason.
A petition for a writ of mandamus seeking relief equivalent to that avail-
able upon an appeal to the Superior Court under G. L. (Ter. Ed.)
c. 180, § 6, as appearing in St. 1949, c. 692, § 1, must be dismissed.
Ownership, maintenance, improvement and operation of a park for the
benefit of the public were charitable purposes within G. L. (Ter. Ed.)
c. 180, § 2, and persons forming a corporation for such purposes under
that chapter had a right to use the word charitable in the articles of
organization.
After there had been compliance with the statutory provisions respecting
formation of a corporation under G. L. (Ter. Ed.) c. 180 by suitable
persons for proper charitable purposes, but the commissioner of cor-
porations and taxation, without authority from the incorporators, had
struck words indicating the charitable nature of the proposed corpora-
tion from the articles of organization, the incorporators were entitled
on appeal to the Superior Court under § 6, as appearing in St. 1949,
c. 692, § 1, to have the commissioner ordered to approve the articles
in the undeleted form in which they were originally presented to him.
The purported issuance of the charter of a charitable corporation after
the commissioner of corporations and taxation without authority had
struck certain words out of the articles of organization and had ap-
proved the articles in their deleted form and filed them with the
Secretary of the Commonwealth, where the incorporators did not
ratify the deletion and upon learning of it returned the purported
charter to the Secretary, did not preclude maintenance of an appeal
to the Superior Court by the incorporators under G. L. (Ter. Ed.)

c. 180, § 6, as appearing in St. 1949, c. 692, § 1, or the entry of a decree thereon ordering the commissioner to approve the articles in the undeleted form in which they were originally presented to him: the filing of the articles with the Secretary in the deleted form was a nullity.

The Secretary of the Commonwealth was not properly a party to a proceeding by the incorporators of a charitable corporation against the commissioner of corporations and taxation in the Superior Court under G. L. (Ter. Ed.) c. 180, § 6, as appearing in St. 1949, c. 692, § 1, respecting approval of the articles of organization.

Two PETITIONS, filed in the Superior Court on January 2, 1951.

The cases were reported by *Morton,* J.

In this court the cases were submitted on briefs.

*H. Robinson* & *W. E. Dwyer,* for the petitioners.

*F. E. Kelly,* Attorney General, & *M. H. Selzo,* Assistant Attorney General, for the commissioner of corporations and taxation and another.

WILKINS, J.   The petitioners, who have undertaken to form a charitable corporation, bring two petitions against the commissioner of corporations and taxation and the Secretary of the Commonwealth.   One is by way of appeal under G. L. (Ter. Ed.) c. 180, § 6, as appearing in St. 1949, c. 692, § 1, and the other is for a writ of mandamus.   The purpose of each petition is the same.   The bringing of two petitions emanates from procedural doubts.   The facts are agreed, and at the request of the parties, the cases are reported to this court without decision.

Annie H. Childs, late of Northampton, by her will appointed a Springfield trust company as her executor and trustee and made the following provision: "Twentieth: I direct and authorize my said executor and trustee, as soon as may be after my death, to cause to be formed or organized a corporation — either by special act or under the general statutes relating to charitable corporations — with such powers as it shall deem proper or necessary to enable such corporation to fully carry out the spirit and purposes of this clause of my will and of the devise hereunder . . ... Upon the formation and organization of such corporation I direct my said executor and trustee to convey and transfer to such

corporation my real estate . . . in said Northampton, commonly known as 'Childs Park' . . . the same to be held, managed, controlled, developed and forever maintained by said corporation and its successors in trust as a public park and a place of rest and quiet recreation, to be known as at present as 'Childs Park,' for the benefit of the people of Northampton and the public generally."

The executor caused the requisite steps to be taken to form the corporation. G. L. (Ter. Ed.) c. 180, §§ 1, 2, 3, as appearing in St. 1947, c. 559, § 1; c. 156, §§ 6, 8–12, as amended. On May 4, 1950, the petitioners, eleven in number, executed an agreement of association, and held a first meeting, at which were elected directors and certain officers. A meeting of the board of directors was held, certain other officers were elected, and the petitioners, as officers and directors of Childs Park Foundation, Inc., executed articles of organization. On May 24, 1950, the petitioners submitted to the respondent commissioner the agreement of association, the articles of organization, the record of the first meeting of incorporators, and the by-laws, and paid the statutory fee.

On June 14, 1950, the commissioner wrote the attorney for the petitioners: "The agreement of association and articles of organization have been received and all the papers are in order. They have now been sent to the board of public welfare for approval by them, after which, we will send them to the Secretary of State for the charter." See G. L. (Ter. Ed.) c. 180, § 6, as appearing in St. 1949, c. 692, § 1.

The department of public welfare reported favorably on October 5, 1950. Thereupon the commissioner without notice to, and without the consent of, the petitioners or their attorney, struck out the words shown in italics in the following portion of the articles of organization: "The purposes for which the corporation is formed are as follows: To operate and function *exclusively as a charitable corporation*, with the rights, powers and privileges permitted by Chapter 180 of the General Laws . . . and more particu-

larly to own, hold, control, maintain, operate, improve and manage a park in the City of Northampton for the benefit of the people of Northampton and the general public, and subject to and in connection with such *charitable* purposes to acquire, own, hold, maintain, improve, sell, mortgage and otherwise deal with real and personal property in such park, and to erect . . . buildings . . . and other structures in such park and to acquire, install, maintain, improve and otherwise deal with shrubs, planting, vines, flowers, trees and all other things horticultural and arboreal in such park and to . . . engage in any activities and business in such park which can be appropriately and legally carried on therein for the recreational, educational and civic advantage and the general benefit of the general public; and further to accept and receive the devise under the twentieth clause of the will of Annie H. Childs . . . commonly known as 'Childs Park' . . . and to hold, maintain, improve and deal with said park in accordance with the provisions of said will and this charter . . . provided that all activities and business conducted or engaged in by this Corporation shall be civic, educational or *charitable* in nature."

On or about October 10, 1950, the commissioner indorsed approval upon the articles of organization in their deleted form, dating his approval May 25, 1950, and filed the articles with the Secretary of the Commonwealth. The latter obtained favorable reports as to the proposed corporation and the incorporators from the requisite municipalities. G. L. (Ter. Ed.) c. 180, § 5, as amended by St. 1947, c. 559, § 2. The Secretary sent a certificate of incorporation to the attorney for the petitioners, who then learned for the first time of the unauthorized changes in the articles of organization. The certificate of incorporation was returned to the Secretary.

On this record, it is impossible to sustain the commissioner, because the agreed facts accept as true all "allegations and facts" of the petition. One of these allegations is that the commissioner, acting in a manner contrary to G. L. (Ter. Ed.) c. 156, § 11, and c. 180, § 6, "has failed and re-

fused arbitrarily and without justification in fact or law, to approve said articles of organization as originally submitted." The respondents, however, in their brief declare that the parties are in agreement except for this matter. As the result will not be affected, we regard the respondents as continuing to deny, as in their answer, that such conduct was arbitrary or unjustified.

It is agreed that the purposes of the incorporation are proper and legal and are not to cover an illegal business; that the petitioners are of financial ability and suitable in every respect; and that there has been compliance with all provisions of G. L. (Ter. Ed.) c. 156 and c. 180 relative either to the investigation of the purposes of incorporation and of the persons applying for incorporation or to the organization and incorporation.

1. The first question is that of the remedy. It is provided in G. L. (Ter. Ed.) c. 180, § 6, as appearing in St. 1949, c. 692, § 1: "Before approving the articles of organization of a charitable corporation the commissioner of corporations and taxation shall refer such articles to the department of public welfare, which shall immediately make an investigation as to the applicants for incorporation and as to the purposes thereof, and any other material facts relative thereto, and shall give such applicants a public hearing . . . and shall forthwith report to the commissioner of corporations and taxation all the facts ascertained by it. If it appears to him from said report or otherwise that the probable purposes of the formation is to cover any illegal business, or that the persons applying for incorporation are not suitable persons, from lack of financial ability or from any other cause, he shall refuse to approve such articles of organization. If he refuses, the applicants may appeal to the superior court, which shall hear the case and finally determine whether or not the articles of organization shall be approved."

The petitioners are in doubt whether the last sentence of § 6 governs when there has been no refusal to approve on any of the grounds referred to in that section. The sentence

begins, "If he refuses," with no qualification stated. We think that the refusal is intended to be all-inclusive and is not confined to the enumerated grounds. We construe the sentence as if it began, "If for any reason he refuses." Accordingly, the petition for writ of mandamus should be dismissed. *Tuckerman* v. *Moynihan*, 282 Mass. 562, 569. *Tranfaglia* v. *Building Commissioner of Winchester*, 306 Mass. 495, 497. *Seney* v. *Board of Health of Northampton*, 314 Mass. 272, 273.

2. The record discloses no reason for the deletions in the articles of organization. The argument is made that maintenance of the park is not a "charitable" purpose under G. L. (Ter. Ed.) c. 180, § 2,[1] in construing which it is contended that that word "is to be given the meaning which connotes the giving of relief to the aged, the impotent and the impoverished and the maintenance of hospitals, schools of learning and churches, as set forth in 43 Elizabeth, chapter 4 (1601)." It may be noted in passing that this is far from a complete description of the Statute of 43 Elizabeth, c. 4, and that the enumeration made in that statute neither was, nor was intended to be, exhaustive. Restatement: Trusts, § 368, comment (a). Scott, Trusts, § 368.1.

The respondents rely upon the history of the section, which originally referred to "educational, charitable, or religious purposes." St. 1857, c. 56, § 1. Gen. Sts. c. 32, § 1. From time to time other adjectives descriptive of purposes were added; for example, "literary, benevolent, scientific" by St. 1869, c. 276; and "musical" by St. 1873, c. 176. By St. 1874, c. 375, § 2, the statute was recast in

---

[1] "Such corporation may be formed for any civic, educational, charitable, benevolent or religious purpose; for the prosecution of any antiquarian, historical, literary, scientific, medical, artistic, monumental or musical purpose; for establishing and maintaining libraries; for supporting any missionary enterprise having for its object the dissemination of religious or educational instruction in foreign countries; for promoting temperance or morality in the commonwealth; for encouraging athletic exercises or yachting; for encouraging the raising of choice breeds of domestic animals and poultry; for the association and accommodation of societies of Free Masons, Odd Fellows, Knights of Pythias or other charitable or social bodies of a like character and purpose; for the establishment and maintenance of places for reading rooms, libraries or social meetings; for establishing boards of trade, chambers of commerce and bodies of like nature."

words more closely resembling its present phraseology, other adjectives descriptive of purposes were added, and a clause was introduced enabling as a purpose "the association and accommodation of societies of Freemasons, Odd Fellows, Knights of Pythias and other charitable or social bodies of a like character and purpose." The position of "charitable" in that clause is conclusive against the limited and archaic interpretation it is now contended should be given the same word earlier in the sentence. It is a general rule of statutory construction that ordinarily a term appearing in different portions of a statute is to be given the same meaning. *St. George's Church* v. *Primitive Methodist Church*, 315 Mass. 202, 205–206. *Bolster* v. *Commissioner of Corporations & Taxation*, 319 Mass. 81, 84.

The respondents seem to concede that the corporation might be charitable within the tax exemption statute. G. L. (Ter. Ed.) c. 59, § 5, as amended. See *Assessors of Quincy* v. *Cunningham Foundation*, 305 Mass. 411. And, broadly speaking, the devise of a tract of land for a park is a public charity. *Burbank* v. *Burbank*, 152 Mass. 254, 256. *Bartlett, petitioner*, 163 Mass. 509, 514. *Richardson* v. *Essex Institute*, 208 Mass. 311, 318. *Burr* v. *Boston*, 208 Mass. 537, 539. Restatement: Trusts, §§ 368, 373. Scott on Trusts, § 373. We think that the maintenance of a public park is also a charitable purpose within G. L. (Ter. Ed.) c. 180, § 2. That such a project might be civic [1] or benevolent (compare *Boston Chamber of Commerce* v. *Assessors of Boston*, 315 Mass. 712, 716), as suggested in the respondents' brief, merely shows that there is some overlapping of meaning among the adjectives descriptive of the purposes, not all of which are charitable. *Moran* v. *Plymouth Rubber Co. Mutual Benefit Association*, 307 Mass. 444, 446. That corporations for the purpose of encouraging horticulture may be incorporated under G. L. (Ter. Ed.) c. 180, § 4, is beside the point, as is the suggestion that the proposed corporation will not be hampered by the absence of the word "chari-

---

[1] The word "civic" was added to § 2 by St. 1915, c. 213.

table" in its articles of organization in seeking exemption from taxes under G. L. (Ter. Ed.) c. 59, § 5, Third. If the intended purpose is charitable under G. L. (Ter. Ed.) c. 180, § 2, the petitioners have the right to use the word in the articles of organization.

The duties imposed upon the commissioner by G. L. (Ter. Ed.) c. 156, § 11, are not discretionary but are limited to the administrative function of certification according to law. The Secretary of the Commonwealth's function in accepting for filing is clerical. See *Cunningham* v. *Commissioner of Banks*, 249 Mass. 401, 422; *Mitchell* v. *Mitchell, Woodbury Co.* 263 Mass. 160, 164; *Elmer* v. *Commissioner of Insurance*, 304 Mass. 194, 199. The petitioners are entitled to have the articles as originally presented indorsed with the commissioner's approval and filed in that form in the office of the Secretary.

3. It is urged that the petitioners have mistaken their remedy, for the reason that the charter has been issued and is not subject to amendment. An argument even is made that the petitioners should petition either (1) for dissolution under G. L. (Ter. Ed.) c. 155, §§ 50–55, and start all over again, or (2) for amendment of the purposes under G. L. (Ter. Ed.) c. 180, § 10, as appearing in St. 1947, c. 559, § 4.

These arguments ignore the fact that the commissioner acted wholly without authority, as well as contrary to his own letter to the attorney for the petitioners, in filing the articles of organization in deleted form with the Secretary of the Commonwealth. The filing in the circumstances was no filing at all, but was a nullity. There was no ratification by the petitioners. Upon learning of the change, they promptly returned the purported certificate of incorporation to the Secretary.

4. We are of opinion that the Secretary of the Commonwealth is not properly a party to a proceeding which is an appeal under G. L. (Ter. Ed.) c. 180, § 6, as appearing in St. 1949, c. 692, § 1, from a refusal by the commissioner of corporations and taxation to approve articles of organization.

5. In case numbered 96 a decree should be entered that the respondent commissioner approve the articles of organization as originally presented in undeleted form. The petition in that case should be dismissed against the respondent Secretary. In case numbered 97 the petition should be dismissed.

*So ordered.*