Plymouth Cty. Nuclear Inf. Comm. *v.* Energy Facilities Siting Council.

proceedings before the commission or the board attributable to the omission. Sloppiness in following a prescribed procedure is not to be condoned, cf. *Schulte* v. *Director of the Div. of Employment Security*, 369 Mass. 74, 79 (1975), but, unlike the application for an abatement, the § 42 application plays such an insignificant role in the process of tax administration that an oversight in its preparation should not prevent the board from reaching the merits of the case.

3. General Laws c. 63, § 42, is a legislative recognition that the § 38 formula sometimes is not reasonably adapted to determine the amount of Massachusetts taxable income earned by a foreign corporation. Once the corporation demonstrates that the statutory formula yields an inappropriate measure of its tax liability, § 42 leaves it to the tax authorities to decide what alternative measure is most appropriate for the particular taxpayer. The decision of the Appellate Tax Board is reversed and the case is remanded for a decision on the merits.

*So ordered.*

---

PLYMOUTH COUNTY NUCLEAR INFORMATION COMMITTEE, INC. *vs.* ENERGY FACILITIES SITING COUNCIL; BOSTON EDISON COMPANY, intervener (and a companion case[1]).

Suffolk. November 10, 1977. — January 12, 1978.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, & LIACOS, JJ.

*Statute,* Construction. *Public Utilities. Electric Company. Jurisdiction,* Review of administrative action. *Words,* "Construction."

The definition of "construction" in G. L. c. 164, § 69G, applies to St. 1975, c. 617, § 15. [239-241]

---

[1] The companion case was brought by Stanley U. Robinson, Third, against the Energy Facilities Siting Council.

Contractual commitments of $34,727,563 made by an electric company to purchase facilities and equipment for the construction of a nuclear energy plant could not be disregarded as inconsequential in determining whether construction of the facility had begun before May 1, 1976, even though the amount constituted less than 2.5% of the projected cost of the facility. [241]

A decision of the Energy Facilities Siting Council that the definition of "construction" contained in G. L. c. 164, § 69G, applied to St. 1975, c. 617, § 15, and that an electric company had undertaken substantial contractual commitments in the construction of a nuclear energy facility prior to May 1, 1976, so that the facility was exempted from the review and approval provisions of G. L. c. 164, §§ 69I and 69J, sufficiently disclosed the reasons for the council's decision. [241-242]

Where the regulations of the Energy Facilities Siting Council acknowledged the right of a party in an administrative proceeding to file a petition for rehearing within seven days of a notice of a final decision and purported to delay commencement of the appeal period as set out in G. L. c. 25, § 5, until the council had acted on the petition for rehearing, an appeal which was not filed within twenty days of the notice of decision but was filed within twenty days of the council's denial of a petition for rehearing was timely. [242-245]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on June 14, 1977.

The case was reserved and reported by *Abrams*, J.

*William S. Abbott* for the plaintiffs.

*Stephen Schultz*, Assistant Attorney General, for Energy Facilities Siting Council.

*George H. Lewald*, for Boston Edison Company, intervener.

WILKINS, J. On April 30, 1976, the Boston Edison Company (Edison) filed with the Energy Facilities Siting Council (council) a long-range forecast of electric power needs. This forecast, which was filed in compliance with G. L. c. 164, § 69I, stated that Pilgrim Station Unit 2 (Pilgrim 2), a nuclear generating plant then proposed to be operational in Plymouth in 1982, was an exempt facility. The principal issue in these appeals is whether Pilgrim 2, a majority of which Edison will own, is exempt from the review and approval provisions of G. L. c. 164, §§ 69I and 69J. We agree with the council's determination that Pilgrim 2 is exempt.

We defer to the end of this opinion consideration of Edison's claim that the appeals are not properly here.

After Edison filed its long-range forecast, the council referred the issue whether Pilgrim 2 was exempt from §§ 69I and 69J to a hearing officer. Plymouth County Nuclear Information Committee, Inc. (PCNIC), an organization of over 500 citizens principally from Plymouth and Barnstable counties, and Stanley U. Robinson, Third, a customer of Edison, were permitted to intervene. The factual contest before the hearing officer focused on the question whether construction of Pilgrim 2 had commenced prior to May 1, 1976. Statute 1975, c. 617, § 15, provides that "[t]he provisions of [G. L. c. 164, §§ 69I and 69J] shall not apply to facilities under construction prior to [May 1, 1976]." General Laws c. 164, § 69G, as appearing in St. 1975, c. 617, § 1, defines construction "[a]s used in [G. L. c. 164, §§ 69H through 69R]," as "any placement, assembly, or installation of facilities or equipment . . ., *including contractual obligations to purchase such facilities or equipment,* at the premises where such equipment will be used, including preparation work at such premises" (emphasis supplied). The significant legal question argued before the hearing officer was whether the definition of "construction," in G. L. c. 164, § 69G, applies to St. 1975, c. 617, § 15, the "grandfather clause" referred to above, which exempts from §§ 69I and 69J those "facilities under construction prior to [May 1, 1976]." PCNIC and Robinson argued that the word "construction" has a less expansive meaning in St. 1975, c. 617, § 15, than in G. L. c. 164, §§ 69H-69R.

The hearing officer concluded that there had been no preparation work at the site and that there had been no "placement, assembly or installation of facilities or equipment on the plant site." He did find, however, that Edison had made "contractual obligations to purchase such facilities" in the amount of $34,727,563. He then determined that the cost of the entire project was expected to be at least $1,396,000,000. He concluded that, even if "construction" does mean the same thing in St. 1975, c. 617, § 15, as it does

374 Mass. 236                                    239

Plymouth Cty. Nuclear Inf. Comm. *v.* Energy Facilities Siting Council.

in §§ 69I and 69J, Pilgrim 2 was not under construction on May 1, 1976, because Edison's contractual obligations were de minimis. In his tentative decision, the hearing officer instructed Edison to file the required information concerning Pilgrim 2 with the council so that the council could begin a review of the project.

The council then considered the question of Pilgrim 2's exemption and rejected the hearing officer's conclusion. It ruled that the § 69G definition of "construction" should be used in determining whether St. 1975, c. 617, § 15, exempts a facility from §§ 69I and 69J, and agreed with Edison that "construction" had commenced before May 1, 1976. The council accepted the propriety of a de minimis standard, as it had in an earlier decision, but ruled that Edison had "incurred substantial contractual obligations sufficient to constitute construction as of May 1, 1976 and that therefore the proposed Pilgrim II plant is exempt from the requirements of [G. L. c. 164, § 69I]."

Both PCNIC and Robinson filed appeals under G. L. c. 25, § 5, as permitted by G. L. c. 164, § 69P. Edison moved to dismiss each appeal on the ground that neither was commenced seasonably. The parties agreed on a record, and a single justice of this court reserved and reported the consolidated appeals for decision on the issues raised by the petitions for appeal and by Edison's motion to dismiss the appeals.

1. The council was correct in ruling that the definition of "construction" in G. L. c. 164, § 69G, applies to St. 1975, c. 617, § 15, and that it should be used to determine whether Pilgrim 2 is exempt from the review and approval requirements of §§ 69I and 69J. We start with a consideration of language within § 69I itself which indicates that the Legislature did not intend that the review and approval requirements of § 69I apply to facilities whose development had progressed as far as had Pilgrim 2's prior to May 1, 1976. The fourth paragraph of G. L. c. 164, § 69I, which is set forth in the margin,[2] states that after an electric com-

---

[2] The fourth paragraph of G. L. c. 164, § 69I, as amended through St. 1974, c. 852, § 7, reads as follows: "Subsequent to the filing as pro-

240                                                374 Mass. 236

Plymouth Cty. Nuclear Inf. Comm. *v.* Energy Facilities Siting Council.

pany has filed its initial long-range forecast and the council has acted on it, the company "shall not commence construction of a facility at a site unless the facility is consistent with the most recently approved long-range forecast." The implication of this prohibition is that an electric company may proceed with constructing and using any facility whose construction was commenced at least before the filing of the company's long-range forecast. There is no doubt that the definition of "construction" in § 69G applies to the word "construction" in § 69I. Section 69G says so explicitly. Thus, even if the word "construction" in St. 1975, c. 617, § 15, did not have the meaning given it by § 69G, Pilgrim 2 would not be subject to review and approval by the council.

This significant exemption within § 69I goes far in support of a reading of St. 1975, c. 617, § 15, to exempt from §§ 69I and 69J all facilities under construction prior to May 1, 1976, in the sense in which "construction" is defined in § 69G. It would be a peculiar reading of the exemption from §§ 69I and 69J appearing in St. 1975, c. 617, § 15, to construe "construction" any less broadly than the exemption for facilities under construction which § 69I itself grants. Moreover, in the absence of a plain contrary indication, a word used in one part of a statute in a definite sense should be given the same meaning in another part of the same statute. *Arnold* v. *Commissioner of Corps. & Taxation,* 327 Mass. 694, 700 (1951), and cases cited. The word "construction" is used in the general exemption, or "grandfather clause," appearing in § 15 of St. 1975, c. 617, and the definition of "construction" in G. L. c. 164, § 69G, appears in § 1 of St. 1975, c. 617. Similar provisions appeared in the

---

vided for in this section by an electric or gas company of its initial long-range forecast, and action thereon by the council as provided for in section sixty-nine J, such company shall not commence *construction* of a facility at a site unless the facility is consistent with the most recently approved long-range forecast or supplement thereto. In addition, no state agency shall issue a construction permit thereafter unless such site and facility conforms [*sic*] to the most recently approved long-range forecast or supplement thereto" (emphasis supplied).

374 Mass. 236                                                  241

Plymouth Cty. Nuclear Inf. Comm. *v.* Energy Facilities Siting Council.

comparable earlier legislation. See St. 1973, c. 1232, §§ 1, 4. We believe that the Legislature as matter of policy has chosen not to subject facilities in Pilgrim 2's position to the requirements of §§ 69I and 69J, and it is not for us to substitute our own judgment for that of the Legislature.[3]

2. We turn then to the question whether the construction of Pilgrim 2 was so insubstantial prior to May 1, 1976, as to permit the council to disregard it in determining whether Pilgrim 2 was "under construction" (St. 1975, c. 617, § 15) before that date. PCNIC argues that Edison's contractual obligations to purchase facilities and equipment ($34,727,563) are less than 2.5% of the projected cost of the facility, and that a sum representing so small a percentage should be disregarded as inconsequential. Even if a de minimis principle may be read into the statutory pattern, as the council appears willing to do and did in an earlier proceeding, we do not view $34,727,563 as an amount so inconsequential that it should be disregarded. The de minimis concept applies where a subject is trifling (see *Albre Marble & Tile Co.* v. *Goverman,* 353 Mass. 546, 550 [1968]) and has been held inapplicable to sums as small as $500 and $1,000 in cases challenging their inclusion in determining local real estate tax rates. See *Jenney* v. *Assessors of Mattapoisett,* 322 Mass. 76, 80-81 (1947), and cases cited. There is nothing in the applicable statute to suggest that the Legislature intended a de minimis principle to be effective in these circumstances. We would be trifling with the de minimis principle if we were to declare that more than $34,000,000 of construction costs is inconsequential. The council was plainly correct in ruling that construction of Pilgrim 2 had commenced prior to May 1, 1976.

3. PCNIC argues that the council's decision failed to set forth adequate reasons for its finding regarding the definition of "construction." The council's determination that

---

[3] Each party has argued at length that particular circumstances evidence a legislative intent in support of its position. We find none of these references controlling or persuasive, one way or the other, in light of the intention shown by the language of the applicable legislation.

construction had commenced on Pilgrim 2 before May 1, 1976, was based (1) on a ruling of law that it should use the definition of "construction" in § 69G and (2) on certain factual conclusions concerning Edison's obligations incurred before that date. The first aspect involved a question of law and required no more than a recitation of the ruling to satisfy the council's duty to disclose its reasoning. The second aspect involved questions of fact and was discussed adequately in the council's decision. PCNIC and Robinson do not seriously challenge those findings. A statement of reasons for agency action in adjudicatory proceedings is required in part to facilitate adequate judicial review. See *Trustees of Clark Univ.* v. *Department of Pub. Utils.*, 372 Mass. 331, 336 (1977); *Save the Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 687 (1975). For the purposes of these appeals, the council's decision sufficiently disclosed the reasons for its action.

4. Edison's motion to dismiss PCNIC's appeal should be denied. Its motion to dismiss Robinson's appeal should be allowed. Edison argues for dismissal of PCNIC's and Robinson's appeals, claiming that they were not filed within the statutory time limit. Under G. L. c. 164, § 69P, any party in interest aggrieved by a decision of the council may obtain judicial review as provided in G. L. c. 25, § 5. A petition for appeal must be filed with the council within twenty days "after the date of service of the decision," and the appealing party must enter the appeal in the county court within ten days thereafter. G. L. c. 25, § 5, as amended through St. 1971, c. 485.

This court has followed the principle that not every procedural misstep requires the dismissal of an appeal. We have made a distinction between serious errors and relatively innocuous ones. See *Schulte* v. *Director of the Div. of Employment Security*, 369 Mass. 74, 79 (1975). In the *Schulte* opinion, we noted that an attempt to institute a late appeal from an administrative decision was a prime example of an omission "so repugnant to the procedural scheme, so destructive of its purposes, as to call for dismissal of the

appeal." *Id.* In this connection, we note that the council has not moved to dismiss the appeal, has not argued here that the appeals are untimely, and has not claimed that a decision on the merits of the appeal would be repugnant to the procedural scheme. The council's abstention may be understandable because, as will be seen, the council's own actions contributed to some degree in creating the circumstances which give rise to Edison's contentions.

On April 13, 1977, the council issued a decision which it entitled in part, "Final Decision." The record does not disclose that the decision was served by mail on PCNIC and Robinson as provided in G.L. c. 25, § 5. However, the decision came to the attention of Robinson and PCNIC's counsel immediately. Robinson filed a "Motion for Rehearing" on the same day, asserting that, because of lack of notice, he had been denied an opportunity to present oral argument to the council. The council granted Robinson the right to be heard and denied his so called motion for rehearing. The council served notice of its final decision by mail on May 4, 1977. That notice included a statement that any aggrieved person could petition for a rehearing "within 7 days after receipt of this notice pursuant to Siting Council rule 17.1."[4] The notice of that final decision was received by PCNIC on May 9, 1977. PCNIC filed a petition for rehearing on May 13, 1977, and the council denied it without hearing on May 17, 1977. PCNIC received notice of that action on May 19, 1977.[5] Robinson and PCNIC filed petitions for appeal with

---

[4]The notice contained certain misstatements. It said that the decision was final for the purposes of judicial review "under [G. L. c. 30A]." Review is available under G. L. c. 25, § 5, not G. L. c. 30A. See G. L. c. 164, § 69P. The notice also indicated that a petition for review could be filed "in the Supreme Judicial Court within 30 days of receipt of this notice pursuant to [G. L. c. 25, § 5]." This characterization of the appeal period available under G. L. c. 25, § 5, is misleading.

[5]Certain of these dates are not established clearly on the record. We are accepting the representations made in an affidavit of PCNIC's counsel and representations made by Edison in its motion to dismiss and in its brief. Where a case is presented on reservation and report, the parties should be certain that no factual uncertainties are present in the record.

the council on June 8, 1977. PCNIC's appeal was filed with the county court on June 14, 1977. Robinson's appeal was filed on June 21, 1977.[6]

Because the council in effect withdrew its April 13, 1977, decision in response to Robinson's claim that he had been denied an opportunity to present final argument, we think the first significant date for determining appellate rights is May 9, 1977, the date PCNIC was served with notice of the council's final decision.[7] If we accept May 9, 1977, as the date notice of the council's decision was served on PCNIC, it is clear that PCNIC's petition for appeal, filed with the council on June 8, 1977, was not timely (i.e., not within twenty days), unless the filing of the request for a rehearing in fact delayed the finality of the council's decision until such time as the council acted on that petition.[8]

Edison argues forcefully that G. L. c. 25, § 5, does not recognize a petition for rehearing in measuring appeal periods. It points out that G. L. c. 30A, § 14 (1), as amended through St. 1976, c. 411, § 1, describes an appeal period measured from the date of the final decision "or if a petition for rehearing has been timely filed with the agency, within thirty days after receipt of notice of agency denial of such petition for rehearing." Chapter 25, § 5, has no similar language. If the council did not acknowledge the right of a

---

The council would facilitate analysis of its actions if it were to include the date it acted in each order and decision.

[6] Robinson's appeal was not entered in the county court within ten days of the filing of his petition for appeal with the council as required by G. L. c. 25, § 5, and it must be dismissed as untimely. No meaningful claim is made that Robinson's appeal was entered seasonably.

[7] Robinson's April 13, 1977, request to be heard was not truly a request for a rehearing. It was a request for a hearing. In turn, the council's action on that request was not a denial of a motion for rehearing. In fact, Robinson was heard.

[8] If the council's decision was not final for purposes of review until it acted on PCNIC's motion for rehearing, service on PCNIC of the council's decision denying the petition for rehearing fixed the date from which PCNIC had to act under G. L. c. 25, § 5, and PCNIC's subsequent actions were timely.

party to petition for rehearing, we would be inclined to agree that a petition for rehearing has no status in the appellate process. But such is not the case here. In analyzing the timeliness of an appeal, the procedural pattern should be assessed in light of the agency's own estimation of the finality of its action, provided, of course, that the agency's perception of the situation is permissible under the governing statutes. The council's regulations and its notice of decision in these proceedings expressly acknowledge the right to file a petition for rehearing within seven days of the notice, and the regulations purport to delay commencement of the appeal period until the council has acted on the petition for rehearing.

If the council is willing to treat its decisions as tentative, or otherwise less than final, we think that it is entitled to do so. It could have achieved the same result by issuing a tentative decision and announcing that it would be made final unless within seven days any party requested reconsideration. We have noted that an appeal under G. L. c. 25, § 5, may not be taken from a tentative decision of the Department of Public Utilities and that a party may appeal only from the agency decision which finally resolves the issue. *Western Mass. Elec. Co.* v. *Department of Pub. Utils.*, 373 Mass. 227, 237 (1977). We conclude that, if the council treats a decision as subject to change on a timely petition for rehearing, that decision is not final for the purposes of review under G. L. c. 25, § 5, until the council has denied a seasonably filed application for a rehearing. Even if the council does not have authority to issue regulations relating to appeal periods,[9] it intended to treat its decision as subject to change, and in this respect PCNIC relied on the representation made in the council's notice of decision.

---

[9] The council is authorized by G. L. c. 164, § 69H (2), inserted by St. 1973, c. 1232, § 1, "[t]o adopt and publish rules and regulations consistent with the purpose of [§§ 69H to 69Q]." The council is expressly authorized to issue regulations "for the conduct of the council's public hearings." We need not decide whether the council's regulations concerning rehearing are authorized by G. L. c. 164.

5. Judgment shall be entered affirming the decision of the council. Edison's motion to dismiss the appeals shall be allowed as to Robinson and shall be denied as to PCNIC.

*So ordered.*