JOHN M. NIGRO & others *vs.* CONSERVATION COMMISSION
OF CANTON.

Norfolk.  January 6, 1984. — January 24, 1984.

Present: GRANT, BROWN, & KASS, JJ.

*Open Meeting Law.  Words,* "Deliberation," "Governmental body,"
"Meeting," "Decision."

A subcommittee of a town's conservation commission making factual in-
vestigations and reporting its findings and recommendations to the full
commission was required by G. L. c. 39, § 23B, to hold open meetings,
to give notice of its meetings, and to maintain accurate records thereof.
[434-436]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 1, 1982.

The case was heard by *Linscott,* J.

*Bernard W. Fang* for the plaintiffs.

*Joseph H. Malloy,* Town Counsel, for the defendant.

*James C. Heigham,* for Massachusetts Newspaper
Publishers Association, amicus curiae, submitted a brief.

GRANT, J.  As the result of a concession made by counsel
for the plaintiffs at the argument, the only questions re-
maining for decision on this appeal are the narrow ones of
whether a three-member subcommittee of the seven-member
conservation commission (G. L. c. 40, § 8C) of the town of
Canton is required by the first, sixth and seventh para-
graphs, respectively, of G. L. c. 39, § 23B (as most recently
amended by St. 1980, c. 220, § 3), to hold open meetings, to
give notice of its meetings, and to maintain accurate records
thereof.[1]  A judge of the Superior Court thought not and en-
tered judgment accordingly.  The plaintiffs, who are three
registered voters of the town (see § 23B, eleventh par.), have
appealed.

[1] See also G. L. c. 66, §§ 5A (as appearing in St. 1964, c. 323, § 2) and
17C (as appearing in St. 1976, c. 397, § 7).

The portions of the record which relate to these questions are sketchy, but it appears that the subcommittee in question is concerned in some way with the implementation or the enforcement of the so called conservation easement which the town of Canton owns in the Prowse Farm and which was considered in *Knowles* v. *Codex Corp.*, 12 Mass. App. Ct. 493, 495-496, 499 (1981).[2] According to the chairman of the commission, whose testimony the trial judge appears to have regarded as credible, the subcommittee's jurisdiction extends to making factual investigations, reporting its findings to the full commission, and making verbal recommendations as to actions which should be taken by the commission. Nothing more appears as to the functions or duties of the subcommittee. There is no dispute that the subcommittee has not in the past complied with the notice and records requirements of the sixth and seventh paragraphs of § 23B.

The answers to our questions turn on the proper construction of the definitions of the terms "Deliberation," "Governmental body" and "Meeting" which are set out in G. L. c. 39, § 23A, as most recently amended by St. 1978, c. 372, § 9, and particularly on the proper construction of the word "decision" as employed in the first and third of those definitions. We start with the definition of "Governmental body" and find that it includes "every board, commission, committee or *subcommittee* of any . . . city . . . or town, however elected, appointed or otherwise constituted" (emphasis supplied). As there is no such legal entity as a "subcommittee of [a] . . . city . . . or town," the only way to avoid stripping "subcommittee" of all meaning in its present context is to read "Governmental body" to include a "subcommittee of any board, commission or committee of any city or town."[3] So far there is no real dispute among the parties.

Their positions diverge when it comes to the proper construction of the terms "Deliberation" and "Meeting." The

---

[2] See also *MacKeen* v. *Canton,* 379 Mass. 514 (1980).

[3] This construction is consistent with the statutory history of the word "subcommittee." See St. 1960, c. 437, § 3; St. 1975, c. 303, § 3.

former is defined as "a verbal exchange between a quorum[4] of members of a governmental body attempting to arrive at a *decision* on any public business within its jurisdiction" (emphasis supplied). The latter is defined as "any corporal convening and deliberation of a governmental body for which a quorum is required in order to make a *decision* at which any public business . . . over which the governmental body has jurisdiction . . . is discussed or considered . . ." (emphasis supplied).[5]

As we have already noted, the "jurisdiction" of the subcommittee extends to making factual investigations and reporting its findings and making recommendations to the full commission. Except in the unlikely event that the members constituting the statutory quorum conduct their exchanges of ideas by convening and then pushing notes to each other across the table, they cannot perform their intended functions without engaging in what a layman would regard as deliberation at a meeting.

All of which brings us to the meaning of the word "decision" as it is employed in the definitions of "Deliberation" and "Meeting." The judge based his conclusion as to the nonapplicability of the sixth and seventh paragraphs of G. L. c. 39, § 23B, on the following reasoning: "The subcommittee here is involved only in the process of making educated recommendations to the full [commission]. Final decision[s] upon whatever alternatives are suggested by the subcommittee are deliberated by the full [commission]. The subcommittee in this case makes no governmental decisions. Its recommendations are considered in open session by the parent body." We think it too clear for discussion that a

---

[4] The term "Quorum" is also defined in G. L. c. 39, § 23A. Consistent with that definition, the parties in their briefs have proceeded on the assumption that there would be no statutory quorum unless at least two of the three members of the subcommittee are present and participate.

[5] This definition concludes by providing that a "[m]eeting" "shall not include any on-site inspection of any project or program." Some of the difficulty in this case appears to have stemmed from the commission's or the subcommittee's failure to distinguish between the latter's on-site inspections and its subsequent formulation of findings and recommendations.

three-member subcommittee cannot make a decision which the law entrusts to a seven-member commission (see G. L. c. 4, § 6, Fifth), and we have no quarrel with the distinction between a recommendation which the subcommittee can make and a decision which can only be made by the requisite majority of the full commission.

We think, however, that the judge's reasoning and the commission's arguments fail to come to grips with the actual language of the definitions of "Deliberation" and "Meeting." Once we accept the proposition that a subcommittee is one form of "[g]overnmental body" and then reread the other relevant definitions, it is readily apparent that the Legislature contemplated that a subcommittee itself can "arrive at a decision" (definition of "Deliberation") or "make a decision" (definition of "Meeting") on any matter which the parent body can and does entrust to the subcommittee.

Comes now the question whether the particular subcommittee in this case is making "decisions" within the meaning of the statutory definitions. We think it axiomatic that any report of facts which the subcommittee may make to the full commission after conducting whatever investigation may be appropriate in the circumstances is necessarily grounded on one or more decisions as to what the facts are. And, of course, the subcommittee-cannot formulate a recommendation without deciding what it should be.

Accordingly, the judgment is reversed, and in accordance with the provisions of the eleventh paragraph of G. L. c. 39, § 23B, a new judgment is to enter which orders the members of the subcommittee to comply in the future with the applicable requirements of the first, sixth and seventh paragraphs of that section whenever the subcommittee engages in making findings of fact which are to be reported to the commission or in formulating recommendations to the commission. Costs of appeal are not to be awarded to any party.

*So ordered.*