Medlock *v.* Board of Trustees of the University of Massachusetts.

AARON MEDLOCK & others[1] *vs.* BOARD OF TRUSTEES OF THE UNIVERSITY OF MASSACHUSETTS & others.[2]

No. 89-P-1300.

Suffolk. January 18, 1991. - October 28, 1991.

Present: PERRETTA, GILLERMAN, & IRELAND, JJ.

*University of Massachusetts. Open Meeting Law. Words,* "Meeting," "Public policy matter," "Governmental body," "Public purpose."

The open meeting law, G. L. c. 30A, §§ 11A & 11A½, did not apply to the activities of animal care and use committees established by the University of Massachusetts and its medical school in compliance with the Federal Animal Welfare Act, 7 U.S.C. §§ 2131 et seq. [499-503]

CIVIL ACTION commenced in the Superior Court Department on October 27, 1987.

The case was heard by *John C. Cratsley*, J., on a motion for summary judgment.

*William E. Searson, III (Terence P. O'Malley* with him) for the defendants.

*Steven M. Wise* for the plaintiffs.

PERRETTA, J. At issue on this appeal is whether the open meeting law, G. L. c. 30A, §§ 11A and 11A½, applies to the defendant animal care and use committees created by the defendant Board of Trustees of the University of Massachusetts (the board) in compliance with the Federal Animal Welfare Act, 7 U.S.C. §§ 2131 et seq. (1988). The plaintiffs, three registered voters, brought a complaint in the Superior Court under § 11A, seeking an order that the committees conduct open meetings. On the plaintiffs' motion for

[1] Holly Pearson and Mark Gailus.

[2] The Institutional Animal Care and Use Committees of the University of Massachusetts and the University of Massachusetts Medical School, and the members of these committees.

summary judgment, the defendants argued that § 11A did not apply to meetings of committees within the University's infrastructure because the Legislature, by G. L. c. 75, §§ 3 and 4, as amended by St. 1977, c. 991, had limited the requirement of open meetings to the board itself. The judge determined that, because the board was not one of the entities expressly excluded by the Legislature from the definition of a "[g]overnmental body" set out in § 11A, the meetings of the board and the committees created by it must be open. On the defendants' appeal, we conclude that, even if these particular committees are governmental bodies, they do not conduct "[m]eetings" within the meaning of that word as used in § 11A, and, therefore, they need not convene in public. We reverse the judgment.

1. *The animal care and use committees.* Because the University and its medical school use live animals for research, tests, and experiments and receive Federal funds for such research, they are research facilities which must comply with the Federal Animal Welfare Act. 7 U.S.C. § 2132(e). The purpose of the Act is to insure that "animals intended for use in research facilities . . . are provided humane care and treatment." § 2131(1). Research facilities are required to register with the Secretary of Agriculture (the Secretary), § 2136, who is mandated to promulgate standards for the handling, care, and treatment of animals. § 2143(a).

Further, although these standards must include requirements "for animal care, treatment, and practices in experimental procedures to ensure that animal pain and distress are minimized," § 2143(a)(3)(A), the Secretary has no authority "to promulgate rules, regulations, or orders with regard to the design, outlines, or guidelines of actual research or experimentation by a research facility as determined by such research facility." § 2143(a)(6)(A)(i). The Act balances society's commitment to the humane treatment of animals with its need for research. See *International Primate Protection League* v. *Institute for Behavioral Research, Inc.,* 799 F.2d 934, 939 (4th Cir. 1986).

Compliance with the Federal standards is assured by the statutory mandate that "each research facility establish at least one Committee," with no less than three members, all of whom are appointed by the facility's chief executive officer. However, one member must be a veterinarian and one must not be affiliated with the facility in any way. § 2143(b)(1). It is the function of the committee to inspect, at least semiannually, all animal study areas and research facilities and to review all practices involving pain to animals and the condition of such animals. § 2143(b)(3).

These inspections are followed by inspection certification reports which must include information concerning "any violation" of the Secretary's standards, "any deviations of research practices from originally approved proposals that adversely affect animal welfare," and "any minority views of the Committee." § 2143(b)(4)(A)(ii) and (iii). The reports are then filed at the facility, where they must remain for at least three years and be open for "inspection by the Animal and Plant Health Inspection Service and any funding Federal agency." § 2143(b)(4)(B). Noncompliance with the Secretary's standards results in a suspension or revocation of "Federal support for the project." § 2143(f).

In addition to the Federal standards, the University and its medical school must comply with regulations issued by the Commissioner of Public Health (the commissioner) under G. L. c. 140, § 174D. See generally 105 Code Mass. Regs. § 910 (1986).[3] As required by 105 Code Mass. Regs. § 910.030(E), a licensed research facility is to submit annual

---

[3]Sections 2143(a)(8) and 2145(b) of the Federal act expressly allow States to promulgate standards in addition to those of the Secretary and require the Secretary to cooperate with State and local officials in carrying out laws "on the same subject." We rely on these provisions of the Act to reject the defendants' argument concerning Federal preemption. See *Archambault* v. *Archambault*, 407 Mass. 559, 564-565 (1990), quoting from *Louisiana Pub. Serv. Commn.* v. *FCC*, 476 U.S. 355, 368, 369 (1986), and *Schneidewind* v. *ANR Pipeline Co.*, 485 U.S. 293, 299 (1988). To the extent the preemption argument is based upon § 2143(a)(6)(B), which protects a facility from public disclosure of "trade secrets or commercial or financial information which is privileged or confidential," we note that there is nothing in the materials before us which suggests that such infor-

reports to the commissioner "regarding its care and treatment of research dogs and cats on a form developed by the Commissioner."[4] Moreover, the commissioner must inspect the facility, with or without prior notice, "at least four . . . times a year," 105 Code Mass. Regs. § 910.24(A), and "[a]ll inspection reports will be held by the Commissioner and shall be considered public records." 105 Code Mass. Regs. § 910.031.

A failure to comply with the commissioner's regulations or to pass inspections constitutes grounds for a suspension or revocation of the license necessary for use of live animals for "scientific investigation, experiment or instruction or for the testing of drugs or medicines." G. L. c. 140, § 174D, as inserted by St. 1983, c. 631, § 8.

2. *The cross motions for summary judgment.* Nowhere in their complaint do the plaintiffs state the specific duties or function of the committees. They allege only that the committees are governmental bodies which refuse to comply with the open meeting law. In their answers to the plaintiffs' complaint and interrogatories, the defendants denied that they were governmental bodies and that they were required to conduct open meetings. The defendants did, however, in response to the interrogatories, describe the role of the committees at the University and its medical school.

In moving for summary judgment, the plaintiffs simply recited that "there is no genuine issue as to any material fact." Although the defendants' motion contains the same recital, it also states that the motion "is made upon the pleadings on file [and] the four sets of answers to interrogatories filed by various defendants."

Turning to the interrogatories, we learn what it is that the committees do at the University and its medical school. Their activities are those "described in the Public Health Service Guide for the Care and Use of Animals." See generally 9

---

mation is at issue. In any event, the open meeting law also protects against public disclosure of such facts. See G. L. c. 30A, § 11A(7).

[4]Although the regulations speak to cats and dogs, they apply to "animals in general." 105 Code Mass. Regs. § 910.001.

C.F.R. §§ 2.30 through 2.38 (1991). The committees alone, according to the requisite assurance filed with the National Institute of Health, approve research projects involving the use of animals. The decision to approve, modify, or reject any proposed project is made through application of the Animal Welfare Act, the Public Health Service Guide, State regulations, the Report of the American Veterinary Medicine Association Panel on Euthanasia, and the Recommendations for Governance and Management of Institutional Animal Resources, as made by the Association of American Medical Colleges and the Association of American Universities. The board has never reviewed, modified, or reversed a decision of the committees.

The plaintiffs accepted the answers to interrogatories and produced nothing which even suggests that the committees' functions include activities beyond those described in the responses. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 714-716 (1991). The narrow question before us, then, is whether the committees must hold open meetings in the course of overseeing compliance with Federal and State standards which control the use and treatment of animals at the University and its medical school.

3. *The open meeting laws.* Our open meeting laws (see G. L. c. 30A, §§ 11A and 11A½; G. L. c. 39, §§ 23A through 23C) encompass State and local government. They are framed in common, sometimes identical, language, and they have the same purpose: "[t]o eliminate much of the secrecy surrounding the deliberations and decisions on which *public* policy is based" (emphasis added). *Ghiglione* v. *School Comm. of Southbridge*, 376 Mass. 70, 72 (1978). These statutes are important to the democratic process. "The people must be able to 'go beyond and behind' the decisions reached and be apprised of the 'pros and cons' involved if they are to make sound judgments on questions of policy and to select their representatives intelligently." Note, Open Meeting Statutes: The Press Fights For the 'Right to Know,' 75 Harv. L. Rev. 1199, 1200-1201 (1962). The most basic

requirement of these statutes is that governmental bodies must conduct public business in the open.

Because of the purpose of these statutes, we choose not to decide this controversy on the basis urged by the defendants, that by reason of G. L. c. 75, §§ 3 and 4, as amended by St. 1977, c. 991, the Legislature intended to exclude all committees created by the board from c. 30A, § 11A. Rather, we assume without deciding that committees created by the board could be governmental bodies subject to the open meeting law, and we confine our analysis to the question whether these particular committees are required to comply with § 11A.

As defined in § 11A, as amended through St. 1976, c. 397, § 1, and as here pertinent, a "[g]overnmental body" is a "state board, committee, special committee, subcommittee or commission, however created or constituted within the executive . . . branch of the commonwealth . . . ." See also G. L. c. 39, § 23A. The committees were created by the board, through delegation of their authority to University officers, as required by 7 U.S.C. § 2143(b).[5] See also 105 Code Mass. Regs. § 910.010 and § 910.200. See and compare *Gerstein* v. *Superintendent Search Screening Comm.,* 405 Mass. 465 (1989), with *Connelly* v. *School Comm. of Hanover,* 409 Mass. 232 (1991). Proceeding on the assumption that these committees are governmental bodies, we will accept the premise that, by approving or rejecting research proposals, the committees make decisions of some form. Compare *Nigro* v. *Conservation Commn. of Canton,* 17 Mass. App. Ct. 433, 435-436 (1984).

Even if these committees are decision-making governmental bodies, it does not necessarily follow that they are subject to § 11A. As we read § 11A, keeping the purpose of the law

---

[5]Because the Federal Act requires that animal care and use committees be created by the facility's chief administrative officer, the defendants make a fleeting protest (but see Mass.R.A.P. 16[a][4], as amended, 367 Mass. 921 [1975]) to the statement in the judge's memorandum of decision that the board created the committees. Noting that § 11A provides "however created or constituted," we, again, assume without deciding that the committees were created by the board.

in mind, we think more is required. A public policy matter must be under discussion or consideration before a governmental body need meet openly. "Meeting" is defined in § 11A, as inserted by St. 1975, c. 303, § 1, as "any corporal convening and deliberation of a governmental body for which a quorum is required in order to make a decision at which any *public policy matter* over which the governmental body has supervision, control, jurisdiction or advisory power is discussed or considered; but shall not include any on-site inspection of any project or program" (emphasis added). The element of "public" is also expressed in the definition of "[d]eliberation" which is a "verbal exchange between a quorum of members of a governmental body attempting to arrive at a decision on any *public business* within its jurisdiction" (emphasis added).

These terms, "public policy" and "public business" require us to consider the meaning of the word "public" as used but not expressly defined in § 11A. In so doing, we return to the definition of "[g]overnmental body" which includes not just boards and committees within the executive or legislative branches of our government but also encompasses the "governing board or body of any authority established by the general court to serve a *public purpose* in the commonwealth or any part thereof" (emphasis added). Whether an authority serves a "public purpose" turns on a variety of factors, all having "reference to the object sought to be accomplished and to the degree and manner in which that object affects the public welfare." *Allydonn Realty Corp.* v. *Holyoke Hous. Authy.*, 304 Mass. 288, 292 (1939). See generally Cella, Administrative Law & Practice §§ 1141-1144 (1986).

Those factors deemed appropriate and nonexclusive in *Allydonn*, 304 Mass. at 293, for consideration in determining whether an authority serves a public purpose are consistent with the general purpose of open meeting laws.[6] See *Ghig-*

---

[6]They are also consistent with the factors to be considered in deciding whether an entity is a governmental body. See *District Attorney for the N. Dist.* v. *Trustees of the Leonard Morse Hosp.*, 389 Mass. 729, 732-733 (1983).

*lione* v. *School Comm. of Southbridge*, 376 Mass. at 72; Note, Open Meeting Statutes, 75 Harv. L. Rev. at 1200-1201. We can discern no reason for ascribing different meanings or connotations to the word "public" as used in § 11A, whether the word modifies "business," "purpose," or "policy." See *Arnold* v. *Commissioner of Corps. & Taxation*, 327 Mass. 694, 700 (1951); *Plymouth County Nuclear Information Comm., Inc.* v. *Energy Facilities Siting Council*, 374 Mass. 236, 240 (1978).

Drawing upon and applying those considerations discussed in *Allydon* to the animal care and use committees, we conclude that these entities do not convene "[m]eetings" within the meaning given that word by § 11A. These committees were established in compliance with 7 U.S.C. § 2143(b)(1), so that the University and its medical school could receive Federal funding for research proposals. Although that research benefits the public, the benefit is more remote and circumstantial than direct and immediate. We also think it most important to consider that governmental control over or interference with academic research is not "in line with the historical development of the Commonwealth and with the general purpose of its founders." *Allydonn Realty Corp.* v. *Holyoke Hous. Authy.*, 304 Mass. at 293. Nor is it in line with the express language of the Animal Welfare Act. See 7 U.S.C. § 2143(a)(6)(A), withholding from the Secretary authorization to promulgate rules or otherwise interfere with actual research or experimentation.

We do not suggest that the law does not recognize that there is public concern about the manner in which animals are cared for and used. The Animal Welfare Act and G. L. c. 140, § 174D, are results of that concern. The place for public expression and vigilance, however, is not at the research facility but at the public hearings where care and use standards are formulated (see 5 U.S.C. § 553 [1988]; G. L. c. 30A, § 3) and violations punished (see 7 U.S.C. § 2143[f]; G. L. c. 140, § 174D), as well as at the facility inspection report repository. See 105 Code Mass. Regs. § 910.030.

Although the defendant committees determine whether the care and use of animals for research purposes at the University and its medical school are consistent with Federal and State standards, they do not consider or discuss public policy matters in order to arrive at a decision on any public business.

*Judgment reversed.*
*Judgment for the defendants.*