COMMISSIONER OF REVENUE vs. EXXON CORPORATION.

Suffolk. November 7, 1989. - March 15, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Commissioner of Revenue. Taxation,* Corporation excise, Abatement. *Administrative Law*, Agency's interpretation of statute. *Words*, "Used."

A corporate taxpayer's failure to include on its timely filed application for abatement of corporate excises its claim that the Commissioner of Revenue had unlawfully computed the taxpayer's income using the "unitary business" approach did not deprive the Appellate Tax Board of jurisdiction of the taxpayer's appeal from the commissioner's denial of his application on the unitary assessment issue. [19-21]

A determination by the Appellate Tax Board that a corporate taxpayer's "unoperated acreage" (real property that was owned or rented by the taxpayer for exploration purposes, but that was not actually producing oil or natural gas during the year in question) was "used" within the meaning of G. L. c. 63, § 38 (*d*), was not unwarranted and, consequently, the board's determination that the taxpayer was entitled to an abatement of corporate excises on the unoperated acreage issue was not erroneous. [21-22]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Lawrence P. Fletcher-Hill,* Assistant Attorney General, for the Commissioner of Revenue.

*John S. Brown* for the taxpayer.

O'CONNOR, J. The Commissioner of Revenue (commissioner) appeals from a decision of the Appellate Tax Board (board) granting abatements of 1979 corporate excises to Exxon Corporation (Exxon). The commissioner asserts that the board erred by ruling that it had jurisdiction to grant an abatement on a claim that the commissioner had unlawfully computed Exxon's taxable income using the "unitary busi-

ness" approach, where the only claims mentioned in Exxon's timely filed application for abatement were "erroneous exclusion of certain real property" and another item not pertinent to the appeal. The commissioner also asserts that the board erred by ruling that Exxon's "unoperated acreage" — real property that was owned or rented by Exxon for exploration purposes, but that was not actually producing oil or natural gas during 1979 — was "used" within the meaning of G. L. c. 63, § 38 (d) (1988 ed.). We transferred the case to this court on our own initiative. We affirm the board's decisions.

Only Exxon's 1979 corporate excise is in dispute in this appeal, so we will relate the facts relative to that year's tax only. Exxon filed a timely return and made timely payments of its corporate excise for 1979. On March 18, 1982, the commissioner assessed Exxon additional excises for 1979 of $1,312,858, plus $451,997.12 in penalties and interest. In its assessment, the commissioner computed Exxon's taxable income using the worldwide "unitary business" approach, which combines Exxon's income with that of various affiliated corporations. The commissioner also revised Exxon's property factor (as defined by G. L. c. 63, § 38 (d), and discussed below) to exclude from the computation of Exxon's taxable income all of Exxon's unoperated acreage, on the ground that unoperated acreage is not "used" within the meaning of § 38 (d). This exclusion increased the value of the property factor and, therefore, as we explain later on in this opinion, also increased Exxon's Massachusetts taxable income.

On March 14, 1984, within the time limits prescribed by G. L. c. 62C, § 37 (1988 ed.), Exxon filed its applications for abatement totalling $366,920, disputing the exclusion of certain real property and another item, as stated above, but not complaining about the commissioner's use of the unitary business approach. In December, 1984, this court in *Polaroid Corp.* v. *Commissioner of Revenue*, 393 Mass. 490 (1984), concluded that the commissioner lacked the statutory authority to use the unitary approach. In January, 1985, after the

time for filing applications for abatement of the March 18, 1982, assessment had lapsed, Exxon filed another application for abatement and a "Statement in Support of Additional Application for Abatement" as an amendment to its March 14, 1984, applications. In this application, Exxon raised the issue of the commissioner's use of the worldwide unitary approach, citing *Polaroid Corp.* v. *Commissioner of Revenue*, *supra*.

On April 22, 1985, the commissioner rejected the additional application as untimely, stating that "[t]he matter of 'Unitary' assessment is a new issue and cannot be amended to an already open abatement claim on which the statute of limitations has expired." On June 20, 1985, Exxon filed a timely petition with the board to appeal the unitary issue. On July 3, 1985, the commissioner denied Exxon's request for an abatement on the "unoperated acreage" issue. On September 3, 1985, Exxon filed with the board another timely petition for appeal as to all amounts disallowed for 1979. The two petitions were considered together on appeal to the board. After a hearing, the board ruled that Exxon was entitled to an abatement on both the unitary assessment and the unoperated acreage issues. We agree with the board that Exxon was entitled to an abatement on both claims.

First, we address the unitary assessment issue. Exxon was not required to identify its specific claims or legal theories in its application for abatement in order to preserve those matters for review by the board. The case of *MacDonald* v. *Assessors of Mashpee*, 381 Mass. 724, 724-726 (1980), is instructive. It involved G. L. c. 59, § 59 (1988 ed.), which provides that an application for abatement of real estate tax must be submitted "in writing" and "on a form approved by the commissioner" of revenue but makes no provision as to contents. We held that, pursuant to that statute, an application for abatement of real estate tax need not contain the specifics of the claim or the applicant's theories. The present case is governed not by G. L. c. 59, § 59, but by G. L. c. 62C, § 37. Nevertheless, *MacDonald* v. *Assessors of Mashpee*, *supra*, is instructive here because in c. 62C,

§ 37, like in c. 59, § 59, the only expressed requirement relative to an abatement application is that it be "in writing to the commissioner, on a form approved by him." It would seem that similar statutes should yield the same answer with respect to the question whether an abatement application must particularize claims and theories.

The commissioner argues that, while c. 59, § 59, applies only to real estate tax, c. 62C, § 37, applies to a large variety of taxes, the determination of which may be complex. While a written application for abatement of real estate tax without specifics may put the taxing authority on reasonable notice of the area of dispute, the commissioner argues, an application for abatement under c. 62C, § 37, does not do so and therefore § 37 *implicitly* requires specification of claims and theories. We are not unsympathetic with the commissioner's position. Nevertheless, we are not persuaded that there is anything implied in the language of c. 62C, § 37, that is not implied in the almost identical language of c. 59, § 59. Of course, the Legislature may address the matter if it chooses to.

The commissioner points out that c. 62C, § 37, requires that an application for abatement must be "on a form approved by him," and that 830 Code Mass. Regs. § 62C.37.1 (4)(c) (1988), promulgated by him in 1980, requires that an application for abatement (form CA-6) set forth the type of tax sought to be abated, the taxable period, the amount of abatement requested, and the specific facts and contentions relied on. Therefore, the commissioner says, the specifics are required. We reject the commissioner's argument for the reason that "[t]he commissioner [may] not under the guise of approving a form for an application impose upon the taxpayer an obligation to furnish information not required by the statute expressly or by implication." *MacDonald* v. *Assessors of Mashpee, supra* at 725, quoting *Assessors of Brookline* v. *Prudential Ins. Co.*, 310 Mass. 300, 308 (1941). Although the requirements of form CA-6 undoubtedly assist the commissioner in processing abatement applications, they do not rise to the level of a jurisdictional requirement with-

out statutory language to that effect. See *Children's Hosp. Medical Center* v. *Assessors of Boston*, 393 Mass. 266, 269 (1984) (the fact that a taxpayer seeking abatement of property tax failed to use the form required by the commissioner but not by statute did not bar the board from hearing the case on appeal).

We turn to the second issue on appeal, which has to do with the unoperated acreage claim. Because Exxon had 1979 income from business activity within and without the Commonwealth, its Massachusetts taxable income was determined under G. L. c. 63, §§ 30 and 38 (1988 ed.), by multiplying its Federal taxable income, with certain adjustments, by an apportionment quotient, which is the weighted average of three "factors" — the ratios of Exxon's property, payroll, and sales in Massachusetts to, respectively, its property, payroll, and sales everywhere. The "property factor" is defined by § 38 (*d*) as "a fraction, the numerator of which is the average value of the corporation's real and tangible personal property owned or rented and used in this commonwealth during the taxable year and the denominator of which is the average value of all the corporation's real and tangible personal property owned or rented and used during the taxable year." The commissioner revised the property factor used by Exxon by excluding from the fraction all of Exxon's unoperated acreage on the ground that such acreage was not "used" within the meaning of the word in c. 63, § 38 (*d*). This revision increased the value of the property factor and therefore increased Exxon's Massachusetts taxable income.

On appeal to the board, the commissioner requested and received the following relevant findings of fact: "Exxon did not conduct tests on each and every tract for the year 1979. Exxon had acres and/or tracts which had no drilling conducted on them for the year 1979. Exxon did not touch every acre or tract every year." Nonetheless, the board concluded that the requirement of "use" had been met. In its decision, the board noted the provision in 830 Code Mass. Regs. § 63.02 (4)(b)(2) that property was includible in the property factor "if it is actually used or is available for use or

capable of being used during the year in the regular course of the trade or business of the taxpayer. Property held as reserves or standby facilities or property held as a reserve source of materials shall be included."[1] The board observed also that "[Exxon] points out that its activities on unoperated acreage are essential to the conduct of its business, in much the same way that in order to maintain a competitive position a manufacturer must invest in research and development of new products, new uses for them, and new methods of producing them. Although the unoperated acreage may not be producing income directly, 'the search [for new sources of petroleum and natural gas] must continue to keep the taxpayer's business alive and thus contributes directly to the taxpayer's income-generating activities.'"

We cannot say that the board's conclusion was unwarranted. "[The board's] determination is due some deference," *French* v. *Assessors of Boston*, 383 Mass. 481, 482 (1981), and its determination here finds support in cases on which it relied. See *Department of Revenue* v. *Amoco Prod. Co.*, 676 P.2d 595 (Alaska 1984); *Appeal of Richfield Oil Corp.*, [1962-1966 Transfer Binder] Cal. Tax Rep. (CCH) par. 202-693 (Nov. 17, 1964). In addition, the commissioner has cited no persuasive authority for his position. We conclude, therefore, that the board's determination that Exxon was entitled to an abatement on the unoperated acreage issue was not erroneous. The decision of the Appellate Tax Board is affirmed.

*So ordered.*

---

[1]Section 63.02 (4)(b)(2) of 830 Code Mass. Regs. was promulgated by the commissioner in 1984 and repealed by him in 1985. In a footnote in his main brief, the commissioner asserts in a single sentence without reasoning or citation of authority that the board erroneously relied on that regulation. The commissioner's assertion does not rise to the level of "argument" within the meaning of Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975), and we do not consider it.