KATHLEEN ALLEN & others[1] vs. BOARD OF SELECTMEN OF
BELMONT & others.[2]

No. 01-P-294.

Middlesex. November 8, 2002. - August 4, 2003.

Present: DUFFLY, KAFKER, & MILLS, JJ.

*Practice, Civil,* Summary judgment, Attorney's fees. *Notice,* Administrative
hearing, Timeliness. *Open Meeting Law. Municipal Corporations,* Open
meetings. *Public Board.*

In an action by certain town residents and registered voters against the town's
board of selectmen seeking to invalidate actions taken by the board at a
meeting from which the public was excluded, during which the board was
alleged to have entered a secret land deal, the judge properly allowed the
board's motion for summary judgment and dismissed the plaintiffs' claims
under G. L. c. 39, §§ 23A-23C, the open meeting law, where any violation
of the open meeting law with regard to proper notice was cured by
independent deliberative action taken at a subsequent town meeting as to
which no issue of improper notice was raised [717-719]; where any viola-
tion of the open meeting law because the board improperly relied on the
executive session real property exception in conducting a closed executive
session was cured by a properly noticed and properly conducted subsequent
public meeting [719-720]; and where the subsequent public meeting and
record thereof also cured any defects in the record of the prior meeting
[720-721].

In an action under G. L. c. 39, § 23B, the open meeting law, the judge cor-
rectly rejected the plaintiffs' claim for an award of attorney's fees and
costs based on the holding in *Pearson* v. *Board of Health of Chicopee,* 402
Mass. 797, 801-802 (1988). [721]

CIVIL ACTION commenced in the Superior Court Department on
June 4, 1999.

The case was heard by *John C. Cratsley,* J., on motions for
summary judgment.

[1] Martha Eakin, Jeff Buster and Linda Cunningham. Cunningham was added
below when one of the original plaintiffs, Kathleen Allen, successfully moved
to withdraw.

[2] William P. Monahan, William Skelley and William Brownsberger as they
are or were the members of the board of selectmen.

*Jeff Buster*, pro se.

*Lee S. Smith* for the defendants.

DUFFLY, J. In a suit against the Belmont selectmen, certain town residents and town registered voters sought to invalidate actions taken by the selectmen at a meeting on May 14, 1999, from which the public was excluded, during which the selectmen are alleged by the plaintiffs to have entered into a secret land deal with McLean Hospital.[3]

Specifically, the plaintiffs, Martha Eakin, Jeff Buster and Linda Cunningham (the residents), claim that the selectmen violated certain provisions of the open meeting law, G. L. c. 39, §§ 23A-23C, when they (1) failed to provide proper notice of the time and location of the May 14, 1999, special open meeting; (2) improperly relied on the real property exception, G. L. c. 39, § 23B(6), of the open meeting law in commencing during that meeting an executive session closed to the public; and (3) produced an inadequate written record of both the special open meeting and the executive session.[4]

The residents and the selectmen filed cross motions for sum-

---

[3]At trial, the residents also claimed that a meeting that occurred on March 15, 1999, violated the open meeting law. They were granted summary judgment as to this claim, and the selectmen do not appeal from that decision. On appeal, the residents now argue for the first time that a videotape of the May 15 meeting is not a public record because it was not in writing and was not approved as a public record by a quorum of the defendants. We decline to consider an argument not raised below. *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521, 540 n.23 (2001).

[4]The residents make an additional claim not presented below that because the meeting was conducted in violation of the open meeting law, a constructive trust should be imposed (whether over the land at issue or over an anticipated 2.2 million dollar payment that was to be paid from the town's tax revenues to McLean Hospital is not clear). In addition, with respect to their unsuccessful claim in the Superior Court for attorney's fees and costs (see discussion, *infra*) they now also claim entitlement in the Appeals Court to such fees and costs under Mass.R.Civ.P. 56(g), 365 Mass. 825-826 (1974), arguing that the selectmen's affidavit, which stated that no vote was taken at the May 14 meeting, was false and was submitted in bad faith.

"It is, of course, axiomatic that an appellate court need not consider a claim that is asserted for the first time after judgment has entered below." *R.W. Granger & Sons, Inc.* v. *J & S Insulation, Inc.*, 435 Mass. 66, 73 (2001). For the reason, if no other, that the residents offer no persuasive authority to support these arguments, we would in any event have rejected them. See *Langton* v. *Commissioner of Correction*, 404 Mass. 165, 166, n.2 (1989); *Commissioner of Rev.* v. *Exxon Corp.*, 407 Mass. 17, 22 n.1 (1990).

mary judgment. The trial court denied the residents' motion and granted that of the selectmen. The residents appeal from summary judgment dismissing their claims under the open meeting law and also from the judge's denial of their request for attorney's fees and costs.

We affirm the grant of summary judgment, but for reasons other than those relied on by the motion judge. We also affirm the denial of attorney's fees and costs. "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991).[5] The reviewing court may consider any ground that supports the judgment. *Ibid.*

*Claim of inadequate notice.* At 3:58 P.M. on May 12, 1999, the Belmont town clerk posted notice of a "special session" of the board of selectmen to convene on May 14, 1999, at 2:30 P.M. at McLean Hospital, 115 Mill Street, Belmont. The special session actually began early, at 2:00 P.M. on May 14, 1999. As a result, notice of the meeting was two hours less than the required 48 hours as set out in G. L. c. 39, § 23B.[6] The residents claim that the selectmen violated the notice requirements of that statute by not providing at least 48 hours prior public notice and also by failing to include the specific location of the meeting. They argue that the motion judge erred in concluding that these deficiencies were de minimis because he failed to consider the

---

[5]We reject the residents' claim that the motion judge improperly allocated the burden of proof between the parties. It is apparent that he made his decision in conformity with the requirements set forth in *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706 (1991).

[6]In pertinent part, G. L. c. 39, § 23B, provides:

"Except in an emergency, a notice of every meeting of any governmental body shall be filed with the clerk of the city or town in which the body acts, and the notice or a copy thereof shall, at least forty-eight hours, including Saturdays but not Sundays and legal holidays, prior to such meeting, be publicly posted in the office of such clerk or on the principal official bulletin board of such city or town. . . . [T]he clerk . . . shall post the notice in his office or on the principal official bulletin board of the city or town. . . . The notice shall be printed in easily readable type and shall contain the date, time and place of such meeting."

residents' further allegations that the selectmen intended to conduct the meeting in secret and, so, acted in bad faith in not providing the required notice.

The motion judge properly determined that the state of mind of the defendants did not require further exploration because intent is not an element in considering whether a violation of the open meeting law has occurred. *Welford* v. *Nobrega*, 30 Mass. App. Ct. 92, 100 (1991) ("[T]here first must be 'some indication before the motion judge' that state of mind is a live issue in the case"). Moreover, procedural deficiencies are de minimis where they do not infringe upon the public's right to attend an open meeting, even allowing that "[e]xecutive sessions of a governmental body subject to the open meeting law must be held in accordance with specific statutory procedures." *Ghiglione* v. *School Comm. of Southbridge*, 376 Mass. 70, 73-74 (1978).

In any case, we need not address whether the alleged deficiencies in this case were de minimis because, under principles set forth in *Pearson* v. *Selectmen of Longmeadow*, 49 Mass. App. Ct. 119 (2000), any violation of the open meeting law "would have been cured by the independent deliberative action taken at the [subsequent May 17 town] meeting," *id.* at 125, as to which no issue of improper notice has been raised.[7]

At the May 17 town meeting, the subject matter of the May 14 meeting was discussed, and deliberative action was taken. Following the May 14 meeting, selectman William Brownsberger prepared a proposal summarizing what had been discussed, which was to be submitted to town meeting on May 17. Brownsberger's summary describes the course of the negotiations between the McLean Hospital representatives and the selectmen and contains the terms of a proposed agreement that included the recommendation that the town pay McLean Hospital 2.2 million dollars in exchange for certain concessions relating to rezoning. These recommendations were presented to

[7]For this reason, we do not reach the residents' claim that the convening of the special open meeting was an action and the decision to move into an executive session constituted a vote, which should be invalidated because of the notice violations.

and approved by the town meeting members at the May 17 meeting.[8]

*The executive session real property exception.* The residents also complain that the May 17 meeting violated the open meeting law because the selectmen improperly relied on the executive session real property exception in conducting a closed executive session. General Laws c. 39, § 23B, requires that "[a]ll meetings of a governmental body shall be open to the public and any person shall be permitted to attend any meeting except as otherwise provided" by that section. Executive sessions (which § 23A defines as "any meeting of a governmental body . . . closed to certain persons for deliberation on certain matters") are to be held only for the purposes enumerated in § 23B. *Gerstein* v. *Superintendent Search Screening Comm.*, 405 Mass. 465, 468 (1989). These include certain deliberations by governmental bodies respecting real property.

The real property exception at issue here permits closed executive sessions "[t]o consider the purchase, exchange, lease or value of real property, if such discussions may have a detrimental effect on the negotiating position of the governmental body and a person, firm, or corporation." G. L. c. 39, § 23B(6). The selectmen argue that this exception applies to the May 14 executive session, which they claim was held (in the words of the draft minutes for the May 14 special session) to "discuss [] the value of real property as it related to . . . land at McLean Hospital" and (in the words of the draft minutes for the executive session) "to discuss a compromise proposal relating to the McLean Hospital land use plan."

During the May 14 executive meeting, detailed information regarding a compromise on the land use plan was exchanged among the selectmen and was discussed with representatives from McLean Hospital who also were in attendance, resulting

---

[8]For a detailed discussion of the proposals involving the McLean Hospital land deal that were ultimately presented to, voted upon, and approved by town meeting members, see *McLean Hospital Corp.* v. *Town of Belmont*, 56 Mass. App. Ct. 540, 543-544 (2002), decided two weeks after oral argument in the present matter, where we concluded that zoning amendments establishing a McLean Hospital zoning district comprised of six subdistricts and making detailed provisions as to permitted uses there were not illegal contract zoning.

in a proposal and recommendations by the selectmen that they agreed to present to town meeting members on May 17.

The Legislature contemplated the need for confidentiality in negotiating contracts involving real property. See *District Atty. for the Plymouth Dist.* v. *Selectmen of Middleborough*, 395 Mass. 629, 631 (1985). Public discussion of the negotiating position of a governmental body would have a negative impact on the price paid or received by the government in a real estate transaction, resulting in possible financial detriment to the public. For example, in connection with a proposed purchase of real estate, open discussion of the value of the property might invite speculators to drive up the eventual price paid by the government, with the result that the additional cost would be born by the public. See *id.* at 633 n.5, citing Wickham, Let the Sun Shine In! Open-Meeting Legislation Can Be Our Key to Closed Doors in State and Local Government, 68 Nw. U. L. Rev. 480, 486 (1974).

We conclude, however, that the purpose of the real property exception — the need for confidentiality in considering the value of property to be purchased, exchanged or leased in order to avoid impairment to the negotiating position of a governmental body — was not met in connection with the May 14 executive session. This is because representatives from McLean Hospital, including its attorney, were present at that session; thus, there was no basis to argue that the selectmen needed to go into closed executive session to establish a confidential negotiating position with McLean Hospital.

However, any violation of the open meeting law in connection with the May 14 meeting was cured by the properly noticed and properly conducted May 17 public meeting. See *Benevolent & Protective Order of Elks, Lodge No. 65* v. *City Council of Lawrence*, 403 Mass. 563, 566 (1988) (city council president's allegedly improper, off-the-record, private conversations with other counsel members were cured by subsequent properly noticed open meetings); *Pearson* v. *Selectmen of Longmeadow*, 49 Mass. App. Ct. at 121-25 (subsequent, properly noticed public meeting would have cured any open meeting law violations of previous, improperly held executive session).

*Sufficiency of the record.* The residents next claim that the

selectmen produced an inadequate written record of the May 14 special open meeting and executive session. They seek to have the record reflect the exact location of the meeting, the persons present, who each person represented, the time of the meeting, the discussion topics, whether the meeting was electronically recorded, and who was responsible for keeping the minutes for the selectmen.

The open meeting law requires less than what the residents seek. It requires only that "[a] governmental body shall maintain accurate records of its meetings, setting forth the date, time, place, members present or absent and action taken at each meeting, including executive sessions." G. L. c. 39, § 23B. The records produced by the selectmen comply with the statute: they give the date ("May 14, 1999"), time ("2:00 P.M."), general location of the meeting ("in McLean Hospital"), and reflect that the town's three selectmen were all present. We do not decide whether what transpired at the meeting constitutes action within the meaning of § 23B, twelfth par.; nor whether, if it did, it was sufficiently set forth in the record of that meeting. The subsequent May 17 open town meeting and record thereof would also cure any defects in the record of the May 14 meeting. See *Pearson* v. *Selectmen of Longmeadow, supra.*[9]

*Attorney's fees.* The motion judge correctly rejected the residents' claim for an award of attorney's fees and costs based on the holding in *Pearson* v. *Board of Health of Chicopee*, 402 Mass. 797, 801-802 (1988), that, "in suits under G. L. c. 39, § 23B, [the court] should not depart from [the] general rule that each party bears its own legal costs."

*Judgment affirmed.*

---

[9]An appropriate remedy would be to order the selectmen to comply in the future with applicable provisions of G. L. c. 39, § 23B, see *Nigro* v. *Conservation Commn. of Canton*, 17 Mass. App. Ct. 433, 436 (1984), which is what the Superior Court judge did.